IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KATHY M. GEORGE, individually and as successor in interest to TROY BRADSHAW, CHRISTAL SHOTWELL, for and on behalf of CRB and TMB, minor children; and CHRISTY HASS, for and on behalf of BEB, a minor child,<br><br>Plaintiffs,<br><br>v.<br><br>BEAVER COUNTY, by and through the Beaver County Board of Commissioners; CAMERON M. NOEL, and TYLER FAILS, and DOES 1-10, inclusive,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS<br><br><br>Case No. 2:16-CV-1076 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants' Motion to Dismiss. For the reasons discussed below, the Court will grant the Motion in part and deny it in part.

I.  BACKGROUND

Plaintiffs' claims arise out of the circumstances of Troy Bradshaw's death at Beaver County Correctional Facility ("BCCF"). Plaintiffs allege that the Beaver County Sheriff's Office arrested Mr. Bradshaw on June 13, 2014, and took him to be treated at Beaver Valley Hospital before booking him at BCCF. Medical staff allegedly indicated that Mr. Bradshaw had "significant psychological problems, potentially including bipolar disorder, schizophrenia, anxiety and depression," explained to officers that it was necessary that Mr. Bradshaw

1

"take . . . psyche meds," and instructed that it was important to find the doctor who had previously prescribed Mr. Bradshaw's medications.[1]

During the booking process at BCCF, Officer Cody Allen noted that "(i) Bradshaw had been receiving mental health counseling; (ii) Bradshaw had thought about committing suicide; (iii) Bradshaw was not thinking about suicide now, but was 'questionable;' (iv) Bradshaw had a brother who had attempted or committed suicide; and (v) Bradshaw was on medication."[2]

Plaintiffs allege that after the booking, Beaver County and/or its employees failed to classify Mr. Bradshaw as a suicide risk or maintain that classification, failed to properly monitor Mr. Bradshaw despite knowing of his mental health history and suicidal ideations, and failed to properly train BCCF staff. In addition, Plaintiffs allege that on June 15, 2014, the BCCF was understaffed and that necessary surveillance equipment was inoperative. On June 15, 2014, Beaver County officers found Mr. Bradshaw dead in his cell during an inmate count.

## II.  STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as the nonmoving party.[3] Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[4] which requires "more than an unadorned, the-defendant-unlawfully

---

[1] Docket No. 2 ¶ 16.

[2] *Id.* ¶ 17.

[3] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

harmed-me accusation."[5]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[6]  Further, in support of a § 1983 claim, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.[7]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[8]  As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[9]

### III.  DISCUSSION

A.  STANDING

Plaintiffs are relatives of the deceased Troy Bradshaw and bring claims for themselves, on behalf of the minor children of Mr. Bradshaw, or as successors in interest.  Defendants argue that all Plaintiffs lack standing because they suffered no injury in their own right and that the only proper party to bring suit would be the personal representative of Mr. Bradshaw's estate.

---

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[7] *Id.* at 676.

[8] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[9] *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

While Congress "clearly envisioned § 1983 to serve as a remedy for wrongful killings . . . §1983 does not specify . . . who are the injured parties, the nature of the claims that may be pursued or who may pursue them, or the types of damages recoverable."[10] 42 U.S.C. § 1988 allows courts to borrow state laws to aid in the enforcement of civil rights statutes in some situations.  To determine whether a state law may supplement § 1983, courts consider whether federal law is "adapted to the object" or is "deficient in the provisions necessary to furnish suitable remedies and punish offenses."[11]  Even where a federal statute is deficient in these respects, as § 1983 is, a federal court must reject the application of state law that is "inconsistent with the Constitution and laws of the United States."[12]

In *Berry v. City of Muskogee, Oklahoma*, the Tenth Circuit applied the § 1988 test and found that the Oklahoma survival action, as supplemented by Oklahoma's wrongful death statute, was inconsistent with § 1983.[13]  The court explained that because each state's law is different, the court "might have to find that a state's law works satisfactorily in some instances, as when there are surviving dependents, but not in other cases, as when there is no one with a right to sue."[14]  The court in *Berry* further explained that state survival and wrongful death laws "are not suitable to carry out the full effects intended for § 1983 cases ending in death of the victim; they are deficient in some respects to punish the offenses.  Application of state law, at

---

[10] *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1502 (10th Cir. 1990).

[11] 42 U.S.C. § 1988.

[12] *Id.*

[13] *Berry*, 900 F.2d at 1504, 1506.

[14] *Id.* at 1506.

least in some instances, will be inconsistent with the predominance of the federal interest."[15] Ultimately, the Tenth Circuit concluded that "federal courts must fashion a federal remedy to be applied to § 1983 death cases. The remedy should be a survival action, brought by the estate of the deceased victim, in accord with § 1983's express statement that the liability is 'to the party injured.'"[16] This Court has relied on *Berry* to conclude that the estate of a deceased victim is the only real party in interest in a § 1983 action.[17] The Court therefore finds that Plaintiffs do not have standing under § 1983. However, the Court must afford Plaintiffs a reasonable time to substitute the real party in interest before their case is dismissed pursuant to Federal Rule of Civil Procedure 17(a)(3). Therefore, the Court will allow Plaintiffs to amend their Complaint to substitute the Estate of Troy Bradshaw as the real party in interest within sixty (60) days.[18]

B. STATUTE OF LIMITATIONS

Plaintiffs filed their Complaint less than three years after Mr. Bradshaw's death. The Tenth Circuit has consistently applied Utah's four-year residual personal injury statute of limitations to § 1983 claims and the Supreme Court has implicitly endorsed this practice.[19] Nevertheless, Defendants argue that Plaintiffs' claims should be dismissed as time barred because the one-year statute of limitations and notice requirement set out in the Utah Governmental Immunity Act should apply.

---

[15] *Id.*

[16] *Id.* at 1506–07 (quoting 42 U.S.C. § 1983).

[17] *Webster v. Gower*, No. 2:07-CV-888-DN, 2010 WL 520522, at *4 (D. Utah Feb. 8, 2010).

[18] *See id.* at *5 (granting sixty days).

[19] *Arnold v. Duchesne Cty.*, 26 F.3d 982, 985 (10th Cir. 1994) (citing *Mismash v. Murray City*, 730 F.2d 1366 (10th Cir. 1984), *cert. denied*, 471 U.S. 1052 (1985)).

Utah Code Ann. § 63G-7-402 provides:

A claim against a governmental entity, or against an employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority, is barred unless notice of claim is filed with the person and according to the requirements of Section 63G-7-401 within one year after the claim arises regardless of whether or not the function giving rise to the claim is characterized as governmental.

The Tenth Circuit has previously rejected the application of a statute of limitations aimed at claims against public officials because, as the Supreme Court acknowledged, "we are satisfied that Congress would not have characterized 1983 as providing a cause of action analogous to state remedies for wrongs committed by public officials."[20] The Supreme Court went on to state that "[i]t was the very ineffectiveness of state remedies that led Congress to enact the Civil Rights Acts in the first place."[21] The Utah Governmental Immunity Act, like the statute previously rejected, singles out claims against government entities and officials and shortens the limitations period for these claims.

Defendants assert that the application of the Utah Governmental Immunity Act's statute of limitations to § 1983 claims is an issue of first impression. However, in *Edwards v. Hare*, another defendant argued that a plaintiff's § 1983 claim was barred due to failure to file the notice of claim required by the Utah Governmental Immunity Act.[22] Citing Tenth Circuit precedent, this court rejected the defendant's argument, stating that "defendants' counsel did inadequate research in arguing that a federal claim may be barred by failure to meet state

---

[20] *Id.* (quoting *Wilson v. Garcia*, 471 U.S. 261, 279 (1985)).

[21] *Wilson*, 471 U.S. at 279.

[22] 682 F. Supp. 1528 (D. Utah 1988).

6

statutory requirements, such as the 'notice of claim' requirement in the Utah Governmental Immunity Act."[23]

The Court rejects Defendants' request to borrow the Utah Governmental Immunity Act's statute of limitations. The application of Utah's four-year residual personal injury statute to § 1983 actions is a settled practice and is consistent with Supreme Court precedent. The application of the Utah Governmental Immunity Act, on the other hand, is inconsistent with Tenth Circuit and Supreme Court precedent, and with the purposes of § 1983.

C. PLAINTIFF'S EIGHTH AMENDMENT CLAIM

Plaintiffs assert a § 1983 cause of action under both the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. The Eighth Amendment protects a right to medical care that is violated if "prison officials manifest a deliberate indifference to an individual's medical needs, and those needs are serious."[24] The Eighth Amendment applies only to convicted inmates, but "the Fourteenth Amendment's Due Process Clause guarantees pretrial detainees the same degree of medical attention as the Eighth Amendment provides for inmates."[25] The parties agree that Mr. Bradshaw was a pretrial detainee, and Plaintiffs have stipulated to the dismissal of their § 1983 claim under the Eighth Amendment. Therefore, the Court will dismiss the portions of Plaintiffs' first and second causes of action pertaining to the Eighth Amendment.

---

[23] *Id.* at 1535.

[24] *Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1320 (10th Cir. 1998) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

[25] *Id.*

D.  PLAINTIFFS' MONNEL LIABILITY, FEDERAL SURVIVORSHIP, FAILURE TO TRAIN, AND DENIAL OF DUE PROCESS CLAIMS

Defendants argue that several of Plaintiffs' causes of action can be combined with Plaintiffs' Fourteenth Amendment claim and should therefore be dismissed.  Some of these claims are duplicative of Plaintiffs' Fourteenth Amendment claim and others are theories of liability rather than independent causes of action.

First, Plaintiffs' claims of federal survivorship and deprivation of life without due process of law are duplicative of the § 1983 claim and the allegations mirror those alleged in support of the § 1983 claim.  These are therefore dismissed.  Second, Plaintiffs' claims of *Monnel* liability and failure to train are not independent causes of action, but rather theories of municipal liability that supplement the § 1983 claim.  The Court dismisses these claims, but Plaintiffs may amend their Complaint to include these allegations as part of their § 1983 claim.

E.  ADA CLAIMS

Claims under the ADA may only be brought against an "employer," which is defined as "a person engaged in an industry affecting commerce who has 15 or more employees . . . , and any agent of such person."[26]  The Tenth Circuit has held that "the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition."[27]  Defendants argue that the ADA claims brought against the individual Defendants Cameron Noel and Tyler Fails should be dismissed because they do not qualify as employers.

---

[26] *Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 744 (10th Cir. 1999) (quoting 42 U.S.C. § 12111(5)(A)).

[27] *Id.*

Plaintiffs make no argument to the contrary. Therefore, Plaintiffs' ADA claims against Defendants Cameron Noel and Tyler Fails are dismissed.

As to the remaining Defendant, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[28] "This provision extends to discrimination against inmates detained in a county jail."[29] To prevail on a Title II claim, a plaintiff must show that "(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability."[30]

In support of the first element, Plaintiffs allege that Mr. Bradshaw had "significant psychological problems, potentially including bipolar disorder, schizophrenia, anxiety and depression."[31] Schizophrenia and bipolar disorders have been found or assumed to be mental disabilities covered under the ADA.[32] However, Plaintiffs have alleged only that Mr. Bradshaw *potentially* suffered from these disorders. There is no suggestion that Mr. Bradshaw was ever diagnosed with a specific disorder. The ADA defines disability as

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

---

[28] *Doe v. Bd. of Cty. Comm'rs of Payne Cty., Okla.*, 613 F. App'x 743, 746 (10th Cir. 2015) (quoting 42 U.S.C. § 12132).

[29] *Id.* n.2 (quoting *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).

[30] *Id.* at 746 (quoting *Robertson*, 500 F.3d at 1193).

[31] Docket No. 2 ¶ 16.

[32] *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1081 (10th Cir. 1997).

(B) a record of such an impairment; or
(C) being regarded as having such an impairment.[33]

Major life activities are further defined as including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."[34] Plaintiffs have not alleged that Mr. Bradshaw was substantially limited in performing these or other major tasks, and have therefore inadequately pleaded that Mr. Bradshaw was disabled under the ADA.

However, regardless of whether there an actual limitation on a major life activity exists, an individual may satisfy this element if he was "regarded as having such an impairment." Plaintiffs have alleged that Defendants took Mr. Bradshaw to a hospital for treatment, where Defendant learned that Mr. Bradshaw had significant psychological problems. Plaintiffs also allege that Defendants noted that Mr. Bradshaw was receiving mental health counseling and was on medication during the booking process. These factual allegations are sufficient to adequately plead disability under 42 U.S.C. § 12102(1)(C).

In support of the second element, Plaintiffs allege that Beaver County had programs and services in place to protect the mentally disabled, but failed to provide Mr. Bradshaw access to these programs.[35] Specifically, Plaintiffs allege that Beaver County failed to classify Mr. Bradshaw as a suicide risk and failed to monitor and respond to Mr. Bradshaw's suicide attempt in accordance with policies and procedures related to inmates with mental health issues.[36] The Supreme Court has noted that "it is quite plausible that the alleged deliberate refusal of prison

---

[33] 42 U.S.C. § 12102(1).

[34] 42 U.S.C. § 12102(2).

[35] Docket No. 2 ¶ 65.

[36] *Id.* ¶¶ 21, 24.

officials to accommodate [plaintiff's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted exclusion from participation or denial of the benefits of the prison's services, programs or activities."[37] Under this broad definition, there is at least a colorable claim that denying Mr. Bradshaw the classification of "suicide risk" and failing to provide the accommodations that accompany such a classification amounted to failure to provide access to a public program, assuming Mr. Bradshaw requested the accommodations or the need for them was obvious.

As to the third element, Plaintiffs must show that Mr. Bradshaw "qualified for the benefits he sought and that he was denied those *solely* by reason of disability."[38] Plaintiffs allege only that Mr. Bradshaw "was discriminated against because he was mentally ill and gravely disabled."[39] This allegation is unsupported by any factual allegation. If the conclusory allegation is disregarded, Plaintiffs do not adequately allege that Mr. Bradshaw was denied services because of his disability.[40] Because the third element of Plaintiffs' claim under Title II of the ADA is inadequately pleaded, the Court dismisses Plaintiffs' ADA claim.

F. FAILURE TO FILE BOND

Defendants argue that Plaintiffs' Complaint must be dismissed for failure to post a bond as required by Utah Code Section 78B-3-104. The statute provides that "[a] person may not file

---

[37] *United States v. Georgia*, 546 U.S. 151, 157 (2006).

[38] *Doe*, 613 F. App'x at 746 (quoting *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005)).

[39] Docket No. 2 ¶ 66.

[40] *See Crownover v. Bd. of Cty. Comm'rs of Ottawa Cty.*, No. 08-CV-020-JHP-PJC, 2010 WL 503110, at *11 (N.D. Okla. Feb. 8, 2010), *aff'd sub nom. Crownover v. Bd. of Cty. Comm'rs of Ottawa Cty., Okla.*, 407 F. App'x 275 (10th Cir. 2011).

an action against a law enforcement officer acting within the scope of the officer's official duties unless the person has posted a bond in an amount determined by the court."[41] Plaintiffs have filed an undertaking pursuant to the Utah Governmental Immunity Act,[42] but the filing took place several months after the Complaint was filed.[43] Plaintiffs have not posted a bond pursuant to § 78B-3-104. This section does not define "law enforcement officer," and Plaintiffs argue that Defendants are not law enforcement officers within the meaning of the statute.

Defendant Cameron M. Noel was allegedly the Sheriff of Beaver County at all relevant times, and Defendant Tyler Fails was the Jail Commander of the BCCF. Although neither side cites authority on this point, this court has required a bond where defendants included a county, a sheriff's office, a county jail, and an individual officer.[44] Therefore, it is appropriate to apply § 78B-3-104.

Utah case law requires undertakings and bonds to be filed contemporaneously with the complaint.[45] A failure to do so requires dismissal, but the dismissal should be without

---

[41] Utah Code Ann. § 78B-3-104(1).

[42] *Id.* § 63G-7-601(2) ("At the time the action is filed, the plaintiff shall file an undertaking in a sum fixed by the court.").

[43] Docket No. 2 (showing that the Complaint was filed October 19, 2016); Docket No. 20-2 (showing that the undertaking was filed January 6, 2017).

[44] *See Mglej v. Garfield Cty.*, No. 2:13-CV-713 CW, 2014 WL 2967605, at *1 (D. Utah July 1, 2014).

[45] *See, e.g.*, *Rippstein v. City of Provo*, 929 F.2d 576, 578 (10th Cir. 1991) (concluding that "an undertaking must be filed contemporaneously with the complaint in order to be timely"); *Kiesel v. Dist. Court of Sixth Judicial Dist. in & for Sevier Cty.*, 96 Utah 156, 84 P.2d 782, 784 (1938) (noting that undertakings must be filed contemporaneously with the complaint and comparing statutory language regarding bonds).

prejudice.[46] "The failure of the court to dismiss is reversible error."[47] Here, Plaintiffs' undertaking was untimely and Plaintiffs have failed to post bond. Therefore, the Court dismisses Plaintiffs' state law claim without prejudice.

## IV. CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Dismiss (Docket No. 10) is GRANTED IN PART and DENIED IN PART.

DATED this 28th day of February, 2017.

BY THE COURT:

Ted Stewart
United States District Judge

---

[46] *Hansen v. Salt Lake Cty.*, 794 P.2d 838, 840 (Utah 1990) ("Dismissal based on failure to file the undertaking should be without prejudice.").

[47] *Mglej*, No. 2:13-CV-713, 2014 WL 2967605, at *2 (citing *Kiesel*, 84 P.2d at 785).