IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KATHY M. GEORGE, on behalf of the ESTATE OF TROY BRADSHAW,<br><br>Plaintiff,<br><br>v.<br><br>BEAVER COUNTY, by and through the Beaver County Board of Commissioners; CAMERON M. NOEL, TYLER FAILS, and DOES 1-10, inclusive,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING EXPEDITED MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND GRANTING MOTION, IN THE ALTERNATIVE, FOR LEAVE TO FILE SECOND AMENDED COMPLAINT<br><br>Case No. 2:16-CV-1076 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Plaintiff's Expedited Motion for Leave to File Second Amended Complaint ("Original Motion") and Motion, in the Alternative, for Leave to File Second Amended Complaint ("Alternative Motion"). For the reasons discussed below, the Court will deny the Original Motion but grant the Alternative Motion.

I. BACKGROUND

This case arises out of the death of Troy D. Bradshaw ("Bradshaw") at the Beaver County Correctional Facility ("BCCF" or "jail"). Mr. Bradshaw was arrested on the night of June 13, 2014. As part of the pre-booking process, an Initial Arrestee Assessment was completed. Mr. Bradshaw indicated that he had thought about suicide in the past, was not thinking about it currently but was "questionable," had a brother who committed or attempted suicide, and was intoxicated with either drugs or alcohol.[1] Based upon this assessment, Mr. Bradshaw was placed on suicide watch. Mr. Bradshaw was placed in a special "dry" cell

---

[1] Docket No. 51 Ex. 1.

1

designated for suicidal inmates ("Cell 2") and was monitored by an officer all night. A shift-change report prepared on the morning of June 14, 2014, noted that Mr. Bradshaw was suicidal and in Cell 2.

A second assessment was completed on June 14, 2014. That assessment also indicated that Mr. Bradshaw was suicidal. Typically, and in accordance with BCCF policy, a suicidal inmate is strip searched, placed in a suicide smock, placed in Cell 2, put on a 15-minute watch, and referred to medical personnel. Additionally, all potential implements of suicide, including bedding and clothing, are to be removed from the cell.[2]

On June 14, 2014, Corporal Randie Rose transferred Mr. Bradshaw out of Cell 2. After the transfer, Mr. Bradshaw was provided with clothing and bedding. There appear to be no records that Mr. Bradshaw was monitored as set out in BCCF policy. Additionally, the shift-change reports prepared on the night of June 14, 2014, and morning of June 15, 2014, do not indicate that Mr. Bradshaw was suicidal. On June 15, 2014, Mr. Bradshaw was found dead in his cell, having apparently hanged himself with his bed sheet.

Plaintiff brought suit against Beaver County, Cameron Noel, the Beaver County Sheriff, and Tyler Fails, a jail employee, blaming them for Mr. Bradshaw's death. Plaintiff also listed a series of Does who were "in some manner responsible for the acts and omissions alleged" in the Complaint.[3]

Plaintiff filed a First Amended Complaint on May 30, 2017. The Court's Scheduling Order required motions to amend pleadings to be filed by October 18, 2017.

---

[2] *Id.* Ex. 8.
[3] Docket No. 2 ¶ 12.

On October 16, 2018, Plaintiff filed her Original Motion, seeking leave to file a Second Amended Complaint. In the Original Motion, Plaintiff seeks to substitute two Doe Defendants with Corporal Randie Rose and Officer Landon Mayer. In conjunction with her Reply to the Original Motion, Plaintiff filed her Alternative Motion. In her Alternative Motion, Plaintiff seeks to substitute Corporal Rose in the place of Defendant Fails. Both Motions are discussed below.

## II. DISCUSSION

A. ORIGINAL MOTION

In the Original Motion, Plaintiff seeks to add Corporal Rose and Officer Mayer in place of two Doe Defendants. In *Garrett v. Fleming*,[4] the Tenth Circuit held that "[a] plaintiff's designation of an unknown defendant as 'John Doe' in the original complaint is not a formal defect of the type [the predecessor to Rule 15(c)(1)] was meant to address."[5] As a result, the plaintiff in that case could not substitute named defendants for John Doe defendants.

Plaintiff argues that *Garrett* is no longer good law in light of the Supreme Court's decision in *Krupski v. Costa Crociere S.p.A.*[6] Plaintiff points to a handful of out-of-district cases to support her contention. The Tenth Circuit has not revisited *Garrett*'s holding after *Krupski*. However, those circuit courts that have addressed the "John Doe rule" post-*Krupski* continue to hold that lack of knowledge regarding the identity of a defendant is not a mistake under Rule

---

[4] 362 F.3d 692 (10th Cir. 2004).

[5] *Id.* at 697.

[6] 560 U.S. 538 (2010).

15(c).[7] Additionally, district courts within the Tenth Circuit continue to recognize the viability of *Garrett* even after *Krupski*.[8] Based upon this, Plaintiff's Original Motion does not identify a mistake under Rule 15(c)(1) and must be denied.[9]

B.  ALTERNATIVE MOTION

Plaintiff's Alternative Motion seeks to substitute Corporal Rose with current Defendant Tyler Fails. The Alternative Motion does not seek to add Officer Mayer as a defendant.

"After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard."[10] Further, because the statute of limitations has expired, the Court must consider whether Plaintiff's request meets the standard set forth in Rule 15(c)(1).

A.  RULE 16(b)(4)

Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." "[T]his standard requires the movant to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts."[11] Thus, "Rule 16's good cause requirement may be satisfied . . . if a plaintiff learns new information through discovery . . . ."[12]

---

[7] *Heglund v. Aitkin Cty.*, 871 F.3d 572, 579–80 (8th Cir. 2017); *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013); *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012).

[8] *Estate of Roemer v. Shoaga*, No. 14-cv-01655-PAB-NYW, 2017 WL 1190558, at * 7 (D. Colo. Mar. 31, 2017) (collecting cases).

[9] As a result of this ruling, the Court need not address Defendants' argument that Plaintiff's proposed amendment fails to state a claim against Officer Mayer.

[10] *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

[11] *Id.* (internal quotation marks omitted).

[12] *Id.*

Plaintiff argues that she has good cause to amend because she learned new information through discovery concerning the alleged role Corporal Rose played in the actions she contends led to Mr. Bradshaw's death. As summarized in her Original Motion, Plaintiff learned the following during depositions that occurred in September 2018:

> Corp. Rose had decision-making authority regarding Mr. Bradshaw as the South side supervisor; Corp. Rose knew that Mr. Bradshaw was suicidal and on suicide watch; Corp. Rose nonetheless authorized his transfer to a holding cell where he knew that Mr. Bradshaw would be provided with clothing and bedding; Corp. Rose did not notify mental health professionals regarding Mr. Bradshaw; Corp. Rose did not place Mr. Bradshaw in a suicide smock; Corp. Rose did not ensure that Mr. Bradshaw received physical checks every fifteen (15) minutes; and Corp. Rose did not prepare a shift change report notifying the next shift that Mr. Bradshaw was suicidal.[13]

Defendants argue that Plaintiff has not demonstrated good cause because she did not act diligently in litigating her suit. Defendants argue that Plaintiff knew of Corporal Rose since August 2017, but did not depose him and others until September 2018.

Good cause is not shown when "the plaintiff knew of the underlying conduct but simply failed to raise tort claims."[14] Here, however, Plaintiff's proposed amendment is based on new facts obtained through discovery. While Defendants argue that Plaintiff could have done more to expedite the discovery process, Plaintiff explains why discovery was delayed. Plaintiff states that her original counsel filed for bankruptcy, necessitating the engagement of current counsel. Counsel further explains that the delay in scheduling depositions was attributable to a number of facts, including heavy case-loads, searching for missing witnesses, and difficulties in scheduling the depositions, which included multiple attorneys and witnesses. In addition, counsel states that

---

[13] Docket No. 51, at 7.

[14] *Gorsuch, Ltd., B.C.*, 771 F.3d at 1240.

5

he spent significant time caring for his wife who was battling breast cancer. Based upon these factors, Plaintiff has adequately demonstrated good cause to modify the Scheduling Order. Thus, the Court must determine whether amendment is proper under Rule 15.

B.   RULE 15(a)(2)

Generally, once a responsive pleading is filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."[15] "The court should freely give leave when justice so requires."[16]

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."[17]

Defendants argue that Plaintiff's amendment is both futile and untimely. Defendants' futility argument relates to Plaintiff's ability to meet the requirements of Rule 15(c)(1), which is discussed below. Thus, the Court turns to whether Plaintiff unduly delayed in seeking amendment.

Undue delay is a potential reason to not permit amendment. However, "[l]ateness does not of itself justify the denial of the amendment."[18] But "[a] party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time."[19] The Tenth Circuit "focuses primarily on the

---

[15] Fed. R. Civ. P. 15(a)(2).

[16] *Id.*

[17] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[18] *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975).

[19] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006) (internal quotation marks and citation omitted).

6

reasons for the delay."[20] Denial may be appropriate "when the party filing the motion has no adequate explanation for the delay."[21] Further, "[t]he longer the delay, 'the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.'"[22]

Here, Plaintiff sought leave to amend shortly after the depositions were conducted in September 2018, which revealed the information that forms the basis for Plaintiff's proposed amendment. The reasons for the delay in conducting the depositions are set forth above. Based upon this, the Court finds that Plaintiff has presented an adequate explanation for the delay in seeking amendment.

Defendants argue that Plaintiff waited too long to seek amendment. Defendants rely on *McKnight v. Kimberly Clark Corp.*[23] In that case, the plaintiff "was aware of all the information on which his proposed amended complaint was based prior to filing the original complaint" and "offered no explanation for the undue delay."[24] Those facts are not present here. Plaintiff learned of the pertinent information during the depositions conducted in September 2018 and sought leave to amend soon thereafter. Therefore, there is no undue delay.

C.     RULE 15(c)(1)

The parties appear to agree that Plaintiff's proposed amendment would be barred by the applicable statute of limitations. "Rule 15(c) of the Federal Rules of Civil Procedure governs

---

[20] *Id.* at 1206.

[21] *Frank v. U.S. West*, 3 F.3d 1357, 1365–66 (10th Cir. 1993).

[22] *Minter*, 451 F.3d at 1205 (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)).

[23] 149 F.3d 1125 (10th Cir. 1998).

[24] *Id.* at 1130.

when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations."[25] Where, as here, "the amendment changes the party or the naming of the party against whom a claim is asserted," the amendment relates back when the party to be brought in by amendment (1) "received such notice of the action that it will not be prejudiced in defending on the merits;" and (2) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."[26]

   *1. Notice*

Rule 15(c)(1)(C) requires that the party to be brought in by amendment receive notice of the action within the time period provided by Rule 4(m) for serving the summons and complaint. Here, the initial Complaint was filed on October 19, 2016, making the relevant date for notice January 17, 2017.[27]

Notice need not be formal,[28] and courts have developed different tests for determining when notice can be imputed to a newly named defendant. Plaintiff relies on the "shared attorney" and "identity of interest" tests.

The "shared attorney" test "is based on the notion that, when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is

---

[25] *Krupski*, 560 U.S. at 541.

[26] Fed. R. Civ. P. 15(c)(1)(C)(i)–(ii). There does not appear to be a dispute that the requirements of Rule 15(c)(1)(B) are satisfied. Therefore, the Court need not address this issue.

[27] *See* Fed. R. Civ. P. 4(m) (providing 90 days for service).

[28] Fed. R. Civ. P. 15(c) advisory committee's note to 1966 amendment; *see also Krupski*, 560 U.S. at 545 (stating that notice requirement was met by constructive notice).

8

likely to have communicated to the latter party that he may very well be joined in the action."[29] "The relevant inquiry under this method is whether notice of the institution of th[e] action can be imputed to [the newly named defendant] within the relevant" time period.[30] "Accordingly, a plaintiff must show that there was some communication or relationship between the shared attorney and the [newly named] defendant prior to the expiration of the [90]–day period in order to avail him or herself of the shared attorney method of imputing notice."[31]

Here, Plaintiff has failed to come forward with any evidence of shared representation or communication between defense counsel and Corporal Rose during the relevant time period. In fact, defense counsel specifically states that Corporal Rose was not represented by Defendants' counsel until after his deposition was requested.[32] This occurred on August 23, 2018,[33] well after the 90 day period set out in Rule 4(m). Without further evidence, notice cannot be imputed through the "shared attorney" method.

Plaintiff next relies on the "identity of interest" method of imputing notice. "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other."[34] Based upon the record before the Court, the Court concludes that

---

[29] *Singletary v. Pa. Dep't of Corrs.*, 266 F.3d 186, 196 (3d Cir. 2001).

[30] *Id.*

[31] *Garvin v. City of Phila.*, 354 F.3d 215, 225 (3d Cir. 2003) (internal quotation marks omitted).

[32] Docket No. 63, at 6.

[33] Docket No. 53-4.

[34] 6A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure § 1499; *see also Schiavone v. Fortune*, 477 U.S. 21, 29 (1986) ("Timely filing of a complaint, and notice within the limitations period to the party named in the complaint, permit

Corporal Rose has a sufficient identity of interest with the previously named Defendants to allow imputed notice. Two cases help the Court reach this conclusion.

*Singletary v. Pennsylvania Department of Corrections* involved a civil rights action based on the suicide death of a prisoner. The plaintiff named the correctional institution at which the decedent was housed at the time of his death. After the statute of limitations expired, the plaintiff sought to add as a defendant a prison psychologist, Robert Regan, who worked at the prison and evaluated the decedent prior to his death. The plaintiff argued that the psychologist shared an identity of interest with the institution because he was employed by the institution.

The question the court addressed was "whether an employee in Regan's position (staff psychologist) is so closely related to his employer for the purposes of this type of litigation that these two parties have a sufficient identity of interest so that the institution of litigation against the employer serves to provide notice of the litigation to the employee."[35] While determining that the issue was a "close one," the court found that the psychologist did not share sufficient identity of interest with the institution to allow for notice to be imputed.[36] The court emphasized that the psychologist was a "staff level employee" "with no administrative or supervisory duties

---

imputation of notice to a subsequently named and sufficiently related party."); *Graves v. Gen. Ins. Corp.*, 412 F.2d 583, 585 (10th Cir. 1969) ("This Circuit has recognized an exception to this rule where the new and old parties have such an identity of interest that it can be assumed that relation back will not prejudice the new defendant.").

[35] *Singletary*, 266 F.3d at 198.

[36] *Id.* at 199.

at the prison."[37] As a result, he "was clearly not highly enough placed in the prison hierarchy for us to conclude that his interests as an employee are identical to the prison's interests."[38]

The court in *Singletary* contrasted its case with *Ayala Serrano v. Lebron Gonzalez*,[39] a case from the First Circuit. In that case, the court found that a prison guard shared an identity of interest with the originally named defendants, who were his superiors. The court noted that the guard was present during the alleged assault that was the basis for the suit and continued to work at the prison, and with the plaintiff in particular, after the filing of the complaint. Under those circumstances, the court found that it was "entirely reasonable to assume that [the newly identified defendant] was notified or knew of the lawsuit commenced by [the plaintiff] as a result of the assault."[40]

Here, Corporal Rose held a supervisory position at the jail at the time of Mr. Bradshaw's death and continues to hold that position.[41] Corporal Rose held the same position that another defendant, Tyler Fails, held at the relevant time. Thus, his interests are identical to the previously named Defendants. Further, Corporal Rose was allegedly involved in many of the actions that Plaintiff alleges led to Mr. Bradshaw's death. Based upon these circumstances, Corporal Rose is more closely aligned with the defendant in *Ayala Serrano*. Like that case, it is reasonable to assume that Corporal Rose was notified or knew of the existence of this suit within

---

[37] *Id.*

[38] *Id.*

[39] 909 F.2d 8 (1st Cir. 1990).

[40] *Id.* at 13.

[41] Docket No. 51 Ex. 5, at 5:2–10.

11

the relevant time period. Further, there is no evidence that he will be prejudiced in defending the merits.

   2.   *Mistake*

The Supreme Court addressed the mistake element of Rule 15(c)(1)(C) in *Krupski v. Costa Crociere S.p.A*. There, the plaintiff suffered an injury aboard a cruise ship. The plaintiff brought suit against Costa Cruise Lines. In her complaint, the plaintiff alleged that Costa Cruise Lines owned, operated, managed, supervised, and controlled the ship on which she was injured. As it turns out, Costa Crociere, not Costa Cruise Lines, was the entity that owned the ship in question. The trial court and the circuit court determined that the plaintiff had not made a mistake under Rule 15(c). The Supreme Court reversed.

The Court defined "mistake" as "[a]n error, misconception, or misunderstanding; an erroneous belief."[42] The Court provided the following examples of mistakes:

> A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties.[43]

Thus, "a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression."[44]

---

[42] *Krupski*, 560 U.S. at 548 (quoting Black's Law Dictionary 1092 (9th ed. 2009)).
[43] *Id.* at 549.
[44] *Id.*

That "choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied."[45] Indeed, a prospective defendant would receive a windfall if he understood, or "should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity."[46]

In *Krupski*, "the complaint made clear that [the plaintiff] meant to sue the company that owned, operated, managed, supervised and controlled the ship on which she was injured and also indicated (mistakenly) that Costa Cruise performed those roles."[47] Since Costa Crociere had constructive notice of the plaintiff's complaint within the relevant time period, it should have known "that it was not named as a defendant in that complaint only because of Krupski's misunderstanding about which 'Costa' entity was in charge of the ship—clearly a 'mistake concerning the proper party's identity.'"[48]

Applying this analysis, the Court concludes that Plaintiff made the same type of mistake here. Plaintiff's First Amended Complaint named Defendant Lieutenant Fails and identified him as the Jail Commander. Plaintiff alleged that, in that capacity, Defendant Fails was responsible for the administration and management of the jail. Plaintiff brought suit against Defendant Fails "for his own culpable action or inaction in the training, supervision or control of subordinates, or his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed reckless or callous indifference for others."[49] Plaintiff alleged that Defendant Fails

---

[45] *Id.*

[46] *Id.* at 550.

[47] *Id.* at 554 (internal quotation marks and citation omitted).

[48] *Id.* at 554–55.

[49] Docket No. 32 ¶ 5.

13

knowingly failed "to ensure enforcement of policies, rules or directives that set in motion a series of events by others which he knew or reasonably should have known would cause others to inflict a constitutional injury on Plaintiff."[50]

In addition to these allegations against Defendant Fails, the First Amended Complaint included a number of allegations against all "Defendants." Relevant here, Plaintiff alleges that Defendants "failed to properly monitor Bradshaw despite knowledge of his mental health history and suicidal ideations;"[51] failed "to properly classify and/or maintain a classification for Bradshaw as a suicide risk;"[52] failed "to heed specific and timely warnings concerning the risk of serious harm or injury to Bradshaw at his own hands;"[53] failed "to intervene and prevent Bradshaw's death;"[54] and allowed "Bradshaw to go without essential mental health care while in their custody."[55]

These allegations make clear that Plaintiff sought to assert a claim against the individual responsible for the operation of the jail at the time of Mr. Bradshaw's death. More specifically, the First Amended Complaint brought claims against the individual or individuals responsible for the decisions that Plaintiff contends ultimately led to Mr. Bradshaw's death, including the decisions of how to classify him, monitor him, and treat him. Plaintiff asserts that, at the time of the filing of her Complaint, she believed Lieutenant Fails was the person responsible for these decisions. However, Plaintiff has since learned that Defendant Fails was not the lieutenant in

---

[50] *Id.*
[51] *Id.* ¶ 23.
[52] *Id.* ¶ 25(a).
[53] *Id.* ¶ 30(b).
[54] *Id.* ¶ 30(d).
[55] *Id.* ¶ 30(e).

charge of the jail at the time of Mr. Bradshaw's death[56] and was working on the opposite side of the jail from where Mr. Bradshaw was housed that day.[57] Discovery has revealed that it was Corporal Rose who was the supervisor allegedly responsible for the failures of which Plaintiff complains. Based upon this, the Court finds that Plaintiff brought suit against Lieutenant Fails instead of Corporal Rose due to "a misunderstanding about his status or role in the events giving rise to the claim at issue."[58] Because Corporal Rose knew of his involvement in the decisions at issue, he knew or should have known that this action would have been brought against him but for Plaintiff's mistake.

Defendants argue that Plaintiff did not make a mistake about the roles of Lieutenant Fails and Corporal Rose, but is instead trying to circumvent the statute of limitations. Defendants argue that Plaintiff's First Amended Complaint demonstrates that Plaintiff was trying to sue the Jail Commander of the jail at the time of Mr. Bradshaw's death and the allegations against Lieutenant Fails related solely to his responsibilities in that capacity. In contrast, the allegations against Corporal Rose relate to his personal involvement in the events that led to Mr. Bradshaw's death. "Essentially the two prior complaints focused on the supervisory and administrative and policy roles of the Sheriff, County, and the Jail Commander. Plaintiff now wants to focus on Rose for his direct involvement in caring for Mr. Bradshaw."[59]

Defendants misstate the scope of Plaintiff's allegations. Plaintiff brought suit against Lieutenant Fails not only in his capacity as a supervisor, but also alleged that he, along with the

---

[56] Docket No. 63-1, at 130:25–131:9.
[57] Docket No. 51 Ex. 12, at 135:13–17.
[58] *Krupski*, 560 U.S. at 549.
[59] Docket No. 63, at 10.

other Defendants, failed to properly classify, treat, and monitor Mr. Bradshaw. These same allegations are brought against Corporal Rose, now with the understanding that Corporal Rose, not Lieutenant Fails, was the individual who was allegedly responsible for the decisions at issue. This is the same type of mistake identified in *Krupski*.

III. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Leave to File Second Amended Complaint (Docket No. 51) is DENIED. It is further

ORDERED that Plaintiff's Motion, in the Alternative, for Leave to File Second Amended Complaint (Docket No. 59) is GRANTED.

Plaintiff is directed to file her Second Amended Complaint (Docket No. 59-1) within fourteen (14) days of this Order.

DATED this 11th day of January, 2019.

BY THE COURT:

Ted Stewart
United States District Judge