IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KATHY M. GEORGE, on behalf of the ESTATE OF TROY BRADSHAW,<br><br>Plaintiff,<br><br>v.<br><br>BEAVER COUNTY, CAMERON M. NOEL, RANDIE ROSE,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:16-CV-1076 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Beaver County and Sheriff Cameron M. Noel's (collectively, "Defendants") Second Motion for Summary Judgment. For the reasons discussed below, the Court will grant the Motion.

I. BACKGROUND

This case arises out of the death of Troy D. Bradshaw ("Bradshaw") at the Beaver County Correctional Facility ("BCCF" or "Jail"). Mr. Bradshaw was arrested on the night of June 13, 2014. He was brought to the Beaver Valley Hospital to be medically cleared before being booked into the Jail. While at the hospital, he asked an officer to kill him on two separate occasions.[1]

After being medically cleared, he was transported to the BCCF. Once at the Jail, an Initial Arrestee Assessment was completed as part of the pre-booking process. Mr. Bradshaw indicated that he had thought about suicide in the past, was not thinking about it currently but

---

[1] Docket No. 91-1, at 6.

1

was "questionable," had a brother who committed or attempted suicide, and was intoxicated with either drugs or alcohol.[2]  Mr. Bradshaw also stated that he would kill himself if he was put in a cell.[3]

Mr. Bradshaw was placed on suicide watch.  Mr. Bradshaw was placed in a special "dry" cell designated for suicidal inmates ("Cell 2") and was monitored by an officer all night.  A shift-change report prepared on the morning of June 14, 2014, noted that Mr. Bradshaw was suicidal and in Cell 2.[4]

A second assessment was completed on June 14, 2014.  That assessment also indicated that Mr. Bradshaw was suicidal.[5]  The assessment included a "final score" of 3221, which indicated that Mr. Bradshaw was suicidal, should be placed on watch, and referred to the medical staff.[6]  Typically, and in accordance with BCCF policy, a suicidal inmate is strip searched, placed in a suicide smock, placed in Cell 2, put on a 15-minute watch, and referred to medical personnel.  Additionally, all potential implements of suicide, including bedding and clothing, are to be removed from the cell.[7]

That same day, Mr. Bradshaw was transferred out of Cell 2 and into Cell 3, which, like Cell 2, is in the booking area of the Jail.[8]  At some point, Mr. Bradshaw was also provided with

---

[2] Docket No. 91-4, at 54.

[3] Docket No. 91-6, at 44.

[4] Docket No. 91-3, at 50.

[5] Docket No. 91-6, at 20–23.

[6] *Id.* at 20.

[7] Docket No. 88-1, at 1–6.

[8] It appears that Mr. Bradshaw was transferred before the second assessment was completed.

2

clothing and bedding. The shift-change reports prepared on the night of June 14, 2014, and morning of June 15, 2014, do not indicate that Mr. Bradshaw was suicidal.[9] On the afternoon of June 15, 2014, Mr. Bradshaw was found dead in his cell, having hanged himself with his bedding.

Plaintiff brings suit against Beaver County, Beaver County Sheriff, and Randi Rose, an officer who worked at the Jail. The County and the Sheriff now seek summary judgment. Defendant Rose has not moved for summary judgment and this case will proceed as against him.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[11] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[12]

---

[9] Docket No. 91-3, at 52–57.

[10] Fed. R. Civ. P. 56(a).

[11] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[12] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

## III. DISCUSSION

"[C]laims based on a jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody."[13] Thus, such claims "must be judged against the 'deliberate indifference to serious medical needs' test of *Estelle v. Gamble*."[14]

"Deliberate indifference involves both an objective and a subjective component."[15] The objective component is met if the deprivation is "sufficiently serious."[16] A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[17] "[S]uicide satisfies this requirement."[18]

The subjective component is met only if a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[19] Thus, "a plaintiff must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'"[20]

---

[13] *Barrie v. Grand Cty., Utah*, 119 F.3d 862, 866 (10th Cir. 1997).

[14] *Estate of Hocker ex re. Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994) (quoting *Martin v. Bd. of Cty Commr's*, 909 F.2d 402, 406 (10th Cir. 1990)).

[15] *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000).

[16] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

[17] *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).

[18] *Gaston v. Ploeger*, 229 F. App'x 702, 710 (10th Cir. 2007).

[19] *Farmer*, 511 U.S. at 837.

[20] *Hunt*, 199 F.3d at 1224 (quoting *Farmer*, 511 U.S. at 847).

A.      BEAVER COUNTY

A municipality may be liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."[21] However, "local governments are responsible only for 'their own illegal acts.'"[22] "They are not vicariously liable under § 1983 for their employees' actions."[23] In order to state a claim for municipal liability, a plaintiff must allege (1) the existence of an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury alleged; and (3) deliberate indifference on the part of the municipality.[24]

"[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."[25] Under a failure-to-train theory, like the one at issue here, the Supreme Court has held that "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983."[26]

---

[21] *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 692 (1972)).

[22] *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

[23] *Id.*

[24] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–70 (10th Cir. 2013).

[25] *Pembaur*, 475 U.S. at 483.

[26] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

5

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."[27] "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."[28]

Plaintiff has presented no evidence that any alleged training deficiency, assuming one exists, reflects a deliberate or conscious choice of the County. There is no evidence of a pattern of tortious conduct. More specifically, there is no evidence of any prior suicides at the Jail.[29] Thus, Plaintiff has failed to establish that the County had notice that its training was deficient.

In "'a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference."[30] This only occurs when "the unconstitutional consequences of a failure to train" are " 'highly predictable' " and "patently obvious."[31] Plaintiff makes three arguments in an attempt to demonstrate deliberate indifference.

Plaintiff first argues that the County failed to train its officers regarding the Jail's Suicide Prevention Policy. The evidence demonstrates that all officers who worked at the Jail were certified as Corrections Officers by the Utah State Peace Officer Standard and Training Division

---

[27] *Connick*, 563 U.S. at 62 (quoting *Bd. of Cty. Commr's of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 409 (1997)).

[28] *Id.*

[29] Docket No. 93-3, at 14:7, 19:23–24.

[30] *Connick*, 563 U.S. at 63 (quoting *Bryan Cty.*, 520 U.S. at 409).

[31] *Id.* at 63–64.

("POST").[32] As part of that certification, officers receive training on suicide prevention.[33] Once officers graduate from POST, they must complete ongoing training and that training can include, among other things, suicide prevention.[34] After completing POST, officers are also required to undergo a job training process called FTO training, which includes training on the Jail's policies.[35] The Jail has created a Suicide Prevention Policy,[36] a copy of which was available to the officers working at the Jail. The Jail also sponsors an annual mental health training that "would provide general mental health training that also sometimes included suicide prevention in the Jail."[37]

Plaintiff has failed to show that the need for additional or different training was so obvious that a violation of constitutional rights was likely to occur by not providing it. As stated, officers received training on suicide prevention both during their POST certification and periodically thereafter. There is no evidence that the need for further training on suicide prevention was so obvious and the inadequacy of the training the officers received was so likely to result in a constitutional violation that the County can be said to have been deliberately indifferent. While some officers could not recall their training in detail and others stated that they had not received specific training on the Jail's Suicide Prevention Policy, the fact "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the

---

[32] Docket No. 88 ¶ 6; Docket No. 89 ¶ 4.
[33] Docket No. 89 ¶ 4.
[34] Docket No. 88 ¶ 8; Docket No. 89 ¶ 4.
[35] Docket No. 88 ¶ 12; Docket No. 89 ¶ 5.
[36] Docket No. 88-1.
[37] Docket No. 88 ¶ 9.

7

city, for the officer's shortcomings may have resulted from factors other than a faulty training program."[38]

Moreover, the fact that additional training may have been beneficial is not sufficient. The Supreme Court has made clear that merely showing that additional training would have been helpful or could have avoided the injury is not sufficient to establish municipal liability.[39] "Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal."[40]

Plaintiff also points to evidence that certain officers violated the Suicide Prevention Policy to support her failure-to-train theory. However, the Supreme Court has held that simply failing to follow jail policies is not a constitutional violation in and of itself.[41] Therefore, even if the Policy was violated, this is not sufficient to establish liability for the County.

Plaintiff next argues that the County failed to train its officers regarding shift change reports. Plaintiff asserts that certain officers violated policy regarding shift change reports by not identifying Mr. Bradshaw as suicidal. However, as stated, failing to follow policy is not a

---

[38] *City of Canton*, 489 U.S. at 390–91.

[39] *Connick*, 563 U.S. at 68; *City of Canton*, 489 U.S. at 391 ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.").

[40] *City of Canton*, 489 U.S. at 391.

[41] *Davis v. Scherer*, 468 U.S. 183, 194 (1984); *see also Gains v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) ("To the extent Gaines seeks relief for alleged violations of state statutes and prison regulations, however, he has stated no cognizable claim under § 1983.").

8

constitutional violation. Moreover, Plaintiff has failed to demonstrate that any alleged failure to train on shift change reports was the deliberate or conscious choice of the County.

Plaintiff further argues that the County was deliberately indifferent by failing to install CCTV monitoring cameras in the cells used for suicidal inmates. Plaintiff asserts that the Suicide Prevention Policy "required the County to equip the suicide watch cells with CCTV monitoring to monitor suicidal inmates in between physical checks."[42] Even if the Suicide Prevention Policy did require CCTVs, Plaintiff has, at most, shown a violation of the policy, not a constitutional right.

Finally, Plaintiff has failed to present evidence of a direct causal link between the asserted deficiencies and the constitutional injury alleged. Therefore, Plaintiff's claim against the County fails.

B.   SHERIFF NOEL

"Section 1983 does not authorize liability under a theory of respondeat superior."[43] "The plaintiff therefore must show an 'affirmative link' between the supervisor and the constitutional violation."[44]

> A plaintiff may therefore succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.[45]

---

[42] Docket No. 91, at 32.

[43] *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).

[44] *Schneider*, 717 F.3d at 767 (quoting *Dobbs v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)).

[45] *Dobbs*, 614 F.3d at 1199.

9

The following undisputed facts are relevant to Plaintiff's claim against Sheriff Noel. Sheriff Noel does not personally supervise the administration of the Jail and did not do so at the time of Mr. Bradshaw's death.[46] Sheriff Noel was unaware that Mr. Bradshaw was incarcerated at the Jail on June 15, 2014.[47] Sheriff Noel was not personally involved in the incident and only became aware of Mr. Bradshaw's death on June 15, 2014, after it occurred.[48]

The Tenth Circuit addressed similar facts in *Cox v. Glanz*.[49] There, like here, the sheriff had no personal contact with the decedent and no direct and contemporaneous knowledge of his treatment by jail officials.[50] The court stated that "in order for any defendant, including Sheriff Glanz, to be found to have acted with deliberate indifference, he needed to first have knowledge that the specific inmate at issue presented a substantial risk of suicide."[51] Because the sheriff "had no personal interaction with [the decedent] or direct and contemporaneous knowledge of his treatment in July 2009"[52] and did not acquire such knowledge from his employees, the court found that the sheriff was entitled to qualified immunity.[53]

Sheriff Noel is entitled to qualified immunity for the same reason. There is no evidence that Sheriff Noel knew that Mr. Bradshaw presented a substantial risk of suicide. As stated, Sheriff Noel did not even know that Mr. Bradshaw was incarcerated at the jail until he learned of

---

[46] Docket No. 88 ¶ 13.
[47] *Id.* ¶ 29.
[48] *Id.* ¶ 15.
[49] 800 F.3d 1231 (10th Cir. 2015).
[50] *Id.* at 1248.
[51] *Id.* at 1251.
[52] *Id.* at 1251–52.
[53] *Id.* at 1254.

his death.  The cases cited by Plaintiff are both non-binding and inapposite.  Therefore, summary judgment is appropriate.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Second Motion for Summary Judgment (Docket No. 87) is GRANTED.  Within fourteen (14) days of this Order, the parties are directed to submit a proposed schedule for the resolution of Plaintiff's claim against Defendant Rose.

DATED this 19th day of August, 2019.

BY THE COURT:

_____
Ted Stewart
United States District Judge